safety. This was not only apparent from observation, but it had been made certain to the Scott by the fact that three vessels, each one as large as herself, had just passed through. Thus far, therefore, there was no impropriety in entering the channel and making the attempt to pass through. But it was said the efforts to get the Morse off then in progress were also apparent; and it was claimed that a probability of the position of the Morse being changed before the Scott could pass her ought to have been also taken into consideration, and that such probability rendered it improper to enter the channel while those efforts were going on. To that proposition I cannot give my unqualified assent. I think it more reasonable and consonant with the interests of navigation to hold that a vessel aground in a narrow channel, but in a situation to admit of other vessels passing her in safety, should, on the approach of another vessel, cease her efforts to get off until the other vessel has passed. To require other vessels, under such circumstances, to await the result of such efforts, would be contrary to universal practice, would tend to a serious hindrance to navigation, and would often occasion serious detriment to vessel owners who are in no manner in fault for the obstruction to the channel. A vessel aground in a situation not admitting of other vessels passing her in safety, presents, of course, a very different case, and one to which the foregoing has no application. The Scott was, therefore, not in fault for entering the channel as she did, and the first charge of fault is not sustained.

2. That the Scott's speed was too great under the circumstances. I think there is a decided preponderance of proof that as soon as the Morse swung out into the channel, the speed of the Scott was checked down to not exceeding four miles an hour, and that, having decided not to stop entirely, but to make the attempt to pass the Morse on her starboard side, her engine was stopped and reversed as soon as it was safe or necessary to do so. To have gone at a much less speed would have endangered her steerage way and her fetching up on the bank, and to have stopped and reversed sooner would have tended to swing her bows against the Morse. The second charge of fault is, therefore, not sustained.

3. That the Scott did not stop and reverse her engine until a collision had become inevitable. As we have already seen, the Scott was rightfully in the channel. If the Morse, when she saw the Scott approaching, had, as I think she ought to have done, desisted from her effort to get off until the Scott had passed, the accident would have been avoided. But she continued her efforts, and by doing so, threw herself athwart the channel and across the bows of the Scott, and that was the primary cause of the collision. Notwithstanding that, however, it was the duty of the Scott to avoid her if she could. Libellants' advocate contended that good seamanship required that the Scott should have stopped at once when she saw the Morse swing out across the channel. That it was within the power of the Scott to stop in time clearly appears by the proofs—the proofs showing that when the Scott saw the Morse swing out, the two vessels were from 500 to 600 feet distant from each other, and that the Scott, at the rate she was then running, could be stopped in about 200 feet. But it must be borne in mind that she was going with the current, and that the channel was too narrow to turn round with safety, and if she stopped, she was in danger of drifting upon the bank and getting aground herself. The master of the Scott, taking in the whole situation, and using his best judgment, as matters then and there appeared to him, thought that by checking and changing his course, he could safely pass the Morse on her starboard side, instead of on her port side, as he had intended, but which, on account of the manœuvres of the Morse, had become impossible, and he acted accordingly. The result proved his judgment correct, so far as to his being able to get his vessel by the Morse, between her and the starboard channel bank; and it is evident that he would have gone entirely clear, if the bow of the Scott had not brought up on the bank before she had entirely passed the Morse, causing her stern to swing round against the Morse, and doing the damage complained of. It may be that if the Scott had stopped, instead of making the attempt to pass after the Morse had changed her position, any accident to either vessel would have been avoided. But that is merely conjectural and speculative, and it must be borne in mind that the emergency was brought about by the Morse herself; that the master of the Scott had but a few moments in which to deliberate; that he had the circumstances and situation all before him, and in view of them decided upon his course—a decision which the result showed was at least not an unreasonable one—and the accident happened, as we have seen. Under all these circumstances, it would not be reasonable or just to charge the Scott with fault for doing as she did instead of stopping, even if the probabilities were stronger than they are that by stopping the accident would have been avoided. The third charge of fault is therefore not sustained. Libel dismissed, with costs to the respondent.

THOMAS EWING, The (VAN SYCKEL v.). See Case No. 16,877.

## Case No. 13,922.

### The THOMAS GIBBONS.

[Cited in The Francis, Case No. 5,036. Nowhere reported; opinion not now accessible. See The Thomas Gibbons, 8 Cranch (12 U. S.) 421.]